FILED

2005 Jan-21  AM 09:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|                                   |   |                      |
|-----------------------------------|---|----------------------|
| **KELLI EMBRY,**                  | ) |                      |
|    **Plaintiff,**  | ) |                      |
|                                   | ) |                      |
|                                   | ) | **2:03-CV-2608-JHH** |
| **vs.**                           | ) |                      |
|                                   | ) |                      |
| **CALLAHAN EYE FOUNDATION**       | ) |                      |
| **HOSPITAL,**                     | ) |                      |
|    **Defendant.**  | ) |                      |
|                                   | ) |                      |

## MEMORANDUM OF DECISION

## Introduction

On February 15, 2002, Kelli Embry (hereafter "Plaintiff") filed a charge with the Equal Opportunity Employment Commission (hereafter "EEOC") alleging that her employer, Callahan Eye Foundation Hospital (hereafter "Defendant"), discriminated against her because of her race.  The EEOC eventually issued a notice of right to sue, and on September 23, 2003, Plaintiff filed the instant action.

In her complaint, Plaintiff alleges Defendant's treatment of her violated both 42 U.S.C. § 2000 (hereafter "Title VII") and 42 U.S.C. § 1981.[1]  Plaintiff

---

[1] Because Title VII and § 1981 "have the same requirements of proof and use the same analytical framework," the ensuing discussion of Plaintiff's claims will refer only to "Title VII" claims; however, the analysis is equally applicable to all of Plaintiff's claims.  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

avers Defendant disciplined her more harshly than a similarly situated white employee for identical offenses.  Plaintiff also claims Defendant retaliated against her for complaining of race discrimination.  Finally, Plaintiff alleges that Defendant supervised her and other African American employees more closely than white employees, and that she was not allowed the same lunch privileges as were white employees.

Defendant moved for summary judgment and filed a memorandum in support of its motion with accompanying evidentiary submissions.  Plaintiff responded by filing an opposition brief, also accompanied by supporting evidentiary submissions.  Defendant has also filed a reply brief.  All of these materials are now before the Court, and the Defendant's motion is under submission.

## Undisputed Factual Background[2]

Defendant is a "full service surgical facility," which offers its patients emergency room care as well as both in patient and out patient surgery.  (Def. Ex. 5 at ¶ 5).  In September 2000, Defendant hired Plaintiff to work in its business office as a Patient Account Representative.  (Def. Ex. 5 at ¶ 5).  Defendant's

---

[2]  Where there is a factual dispute, unless otherwise noted, the facts are stated in the light most favorable to the plaintiff.

business office handles all billing matters, including collections and payments. (Def. Ex. 5 at ¶ 3). When Plaintiff began work at Defendant's business office her immediate supervisor was Mark Teske. (Def. Ex. 5 at ¶ 5). In February 2001, Keren Elkins took supervisory responsibility over Defendant's business office, including Plaintiff. (Def. Ex. 5 at ¶ 5).

When Elkins became the business office supervisor she changed some of the policies that existed under Teske. Under Elkins's supervision, all employees were required to clock in and out on their lunch break, even though Teske had never enforced such a requirement. (Def. Ex. 1 at 19). After Elkins changed the policy, Plaintiff began clocking in and out for lunch as requested, yet Michelle Capps, Tonya Ruiz and Dina Hall, some of Plaintiff's co-workers, were not clocking out for lunch as were other employees. (Def. Ex. 1 at 23; Ex. 2 to Def. Ex. 1 at 2-5). Plaintiff's co-workers who were not clocking out for lunch were likewise taking longer than the 30 minutes allowed for lunch. (Def. Ex. 1 at 27). On one occasion, Capps and another co-worker made a trip to Toys-R-Us to buy toys for a charitable program in which the office was participating.[3] Capps did not

---

[3] Plaintiff contends that Elkins and Bennet accompanied Capps on her trip to Toys-R-Us. However, Plaintiff only knows that Capps told her one of these women was going to accompany her to Toys-R-Us. Plaintiff lacks personal knowledge as to which, if either, of the women actually accompanied Capps to Toys-R-Us.

clock out when she ran this errand. (Def. Ex. 1 at 47, 49). Likewise, on another holiday, Nelda Patterson was allowed to leave the office to purchase candy and/or toys for a charitable project in which the office was participating. (Def. Ex. 1 at 50).

On May 31, 2001, Plaintiff and Sanquentta Williams were discussing the requirements that all employees clock out for lunch and limit their break to thirty minutes. Capps overheard their conversation, approached them and began arguing with Plaintiff. (Def. Ex. 1 at 121). The argument escalated, and Williams and another employee separated Capps and Plaintiff. (Def. Ex. 1 at 121). After the argument was over, Elkins called Plaintiff to her office and spoke with her about the confrontation with Capps. Elkins did not discipline either employee. (Def. Ex. 1 at 124). After her meeting with Elkins, Plaintiff met with Karen Burleson, Defendant's Director of Human Resources, and discussed the argument with Capps, as well as other inconsistencies in office management. (Ex. 11 to Def. Ex. 1). As a result of the altercation and at the behest of Burleson, Plaintiff wrote a memo on June 5, 2001, outlining her complaints. (Ex. 11 to Def. Ex. 1).

Eight months later, in February 2002, Elkins overheard some employees laughing and talking and reminded them that they should be working. (Ex. 11 to Def. Ex. 1). Plaintiff rudely responded to Elkins's admonishment and continued to

4

talk about Elkins after the incident was over.  (Ex. 11 to Def. Ex. 1).  As a result of this behavior, the next day Elkins and Libby Bailey, Defendant's Chief Operating Officer, met with Plaintiff and gave her a written reprimand for being insubordinate and eating breakfast while she was on the clock.  (Ex. 11 to Def. Ex. 1).  In addition, Plaintiff was no longer allowed to make up work on Saturdays. (Def. Ex. 1 at 37).

In May 2001, around the same time Plaintiff had complained to Burleson of inequitable treatment, Capps was hospitalized due to an allergic reaction she had to another employee's perfume.  (Def. Ex. 5 at ¶ 6).  To remedy this problem, Defendant required Capps to wear a mask while in the office.  Because the mask interfered with Capps's ability to do her job, Defendant began to relocate her anytime she showed signs of an allergic reaction.  This solution also failed because there was often inadequate space for Capps to work.  Eventually, in August of 2001, Defendant changed its policy and issued a memo telling all employees to refrain from wearing fragrances of any kind in order to avoid allergic reactions among the staff and patients.  (Ex. 13 to Def. Ex. 1).  Elkins held a meeting with the business office staff to discuss the memo and posted it in the employee newsletter in September.  (Def. Ex. 5 at ¶ 6).

The no fragrance policy remained in place, and until April 2002, Elkins and

other management agreed that any employee wearing fragrance would be warned not to do so, but no specific disciplinary action would be taken.  (Def. Ex. 5 at ¶ 7).  During the time period between the implementation of the no fragrance policy and April 2002, Elkins continually received complaints about employees wearing perfume.  (Def. Ex. 2 at 26).  On April 10, 2002, Bailey, Burleson, and Elkins met with the staff and discussed, among other issues, the no fragrance policy.  (Def. Ex. 5 at ¶ 7).  Plaintiff attended this meeting.  (Def. Ex. 1 at 171).  The policy was reiterated to the employees, and after the meeting, Elkins, Bailey and Burleson agreed that any employee who wore a fragrance would be suspended for the remainder of the day.  (Def. Ex. 5 at ¶ 7).

On April 16, 2002, Elkins received complaints that some employees were wearing fragrances.  In response to the complaints, Elkins and Deborah Russell, the employee health nurse, walked through the work area trying to detect who was wearing perfume.  Both Elkins and Russell noticed that Plaintiff had on a fragrance.  (Def. Ex. 2 at 25-26).  Elkins and Burleson met with Plaintiff regarding her use of a fragrance, gave her a written reprimand and suspended her for the rest of the day without pay.  (Def. Ex. 2 at 27-28; Ex. 3 to Def. Ex. 2; Def. Ex. 1 at 219).

## Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant.  Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is

7

genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing U.S. v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving

8

party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>Lewis v. Casey</u>, 518 U.S. 343 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

## Applicable Substantive Law and Analysis

Title VII prohibits employers from discriminating against employees because of their race.  See 42 U.S.C. § 2000e-2(a)(1)-(2); see also 42 U.S.C. § 1981.  To succeed on a Title VII race claim, a plaintiff bears the burden of producing a *prima facie* case of discrimination. Holifield v. Reno, 115 F.3d 1555, 1561 (11th Cir. 1997).  A plaintiff may discharge his burden by offering "direct evidence, circumstantial evidence or statistical evidence."  Standard v. A.B.E.L., Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  In the instant case Plaintiff offers no direct or statistical evidence.

Because Plaintiff's claims are "supported by circumstantial evidence, this Court uses the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)."  Combs v. Plantation Patterns, 106 F.3d 1519, 1527 (11th Cir. 1994).  Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally.  See id. at 1527-28.  The methods of presenting a *prima facie* case, as well as the exact elements of the case, are not fixed; rather they are

10

flexible and depend to a large degree upon the facts of the particular situation.
See, e.g., Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185
(11th Cir. 1984); Lincoln v. B/D:. of Regents of Univ. Sys., 697 F.2d 928, 937
(11th Cir. 1983).

Once the plaintiff has shown a *prima facie* case, and raised the presumption
of discrimination, the burden of production shifts to the employer to articulate a
legitimate, nondiscriminatory reason for its actions.[4]  See Combs, 106 F.3d at
1528.  The employer "need not persuade the court that it was actually motivated by
the proffered reasons."  Burdine, 450 U.S. at 254-55; see Chapman, 229 F.3d at
1024.  If the employer satisfies that burden by articulating one or more such
reasons, then the presumption of discrimination falls, and the burden of production
again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to
conclude that the employer's supposedly legitimate reason is merely a pretext for
illegal discrimination.[5]  Where the defendant articulates multiple, reasonable,
legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's

---

[4] See Chapman, 229 F.3d at 1034 (stating that "[a] subjective reason is a legally
sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably
specific factual basis upon which it based its subjective opinion").

[5] If the proffered reason is one that might motivate a reasonable employer, a plaintiff
cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that
reason is not sufficient.  Chapman, 229 F.3d at 1030.

proffered reasons.  See Chapman, 229 F.3d at 1024-25. Although the *prima facie* case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case.  See Combs, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Burdine, 450 U.S. at. 253.  Given that the ultimate burden of persuasion always lies with the employee, a plaintiff pursuing an employment discrimination claim may defeat a summary judgement motion either by producing sufficient evidence from which a rational trier of fact could conclude that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence from which a rational trier of fact could disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-49, 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's

12

*prima facie* case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

## 1.    Disparate Treatment

In general, a plaintiff establishes a *prima facie* case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class, was subjected to an adverse employment action and that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[6] See Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002); see also Holifield, 115 F.3d at 1562 (11th Cir. 1997).  In the instant case there is no question that Plaintiff, an African American, is a member of a protected class. Likewise, the fact that Plaintiff has been employed by Defendant for some time

---

[6] See also McDonnell Douglas, 411 U.S. at 802 n.13 (observing that "[t]he facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations").

and remains employed with Defendant, indicates that Plaintiff is indeed qualified for the position she occupies.  See Crapp v. City of Miami Beach, 242 F3d 1017, 1020 (11th Cir. 2001).  Plaintiff now bears the burden of producing evidence sufficient for a reasonable jury to conclude that she has suffered an adverse employment action and that a similarly situated employee of another class was treated more favorably.  Holifield, 115 F.3d at 1562.  _____

It is clearly established in this circuit "that not all conduct by an employer negatively affecting an employee constitutes adverse employment action."  Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001).  Rather, an adverse "employment action must affect a term or condition of employment and is not adverse merely because an employee dislikes or disagrees with it." Merriweather v. Alabama Dept. of Public Safety, 17 F. Supp. 2d 1260, 1274 (M.D. Ala. 1998).  The Eleventh Circuit has recognized that "Title VII[ ] is neither a general civility code nor a statute making actionable the 'ordinary tribulations of the workplace.' " Gupta v. Florida B/D:. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (citations omitted).  In Davis, the Eleventh Circuit reasoned that to constitute an adverse action there must be "a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a *significant* change in benefits."

14

245 F.3d at 1239.  Consequently, the <u>Davis</u> court held that at the very least the action must be "a serious and material change in the terms, conditions or privileges of employment," and "the employee's subjective" opinion of the action is irrelevant; "the action must be materially adverse as viewed by a reasonable person." <u>Id.</u>

Against this backdrop, the cornerstone of Plaintiff's allegation is that she was suspended from work on April 16, 2002, for wearing cologne in violation of Defendant's no fragrance policy.  In addition, after February 7, 2002, Plaintiff was no longer allowed to "make-up" hours on Saturdays as a result of her reprimand for insubordination.  Plaintiff also alleges she has suffered adverse employment action because she has been required to clock in an out during her lunch break and limit the length of her lunch break to thirty minutes.  While these requirements are certainly reasonable, Plaintiff alleges that white employees, specifically Michelle Capps, have not been required to do so.  Even assuming the truth of all of Plaintiff's contentions, it is doubtful that the combination of all of these factors is sufficient to constitute an adverse employment action.

First, Plaintiff's allegations regarding unequal lunch periods are clearly not sufficient to constitute an adverse action.  Other than an e-mail: sent out to all the employees in the business office, no specific action was taken in regard to

Plaintiff's lunch periods.  Moreover, Plaintiff admits that she does not know if Elkins was aware that Capps was not clocking in and out for lunch.  Because one or more employees chooses to break the rules does not mean that every other employee who obeyed the rules was subject to an adverse action.  While the dishonest employees may have gained something, the honest employees have certainly not lost anything they were entitled to.

Plaintiff's more substantial claims of adverse action revolve around her losing the privilege to make up hours on Saturdays and her suspension.  As to Plaintiff's loss of privilege of working Saturdays, any actual harm she suffered is merely speculative.  The Eleventh Circuit has recognized that "[a]lthough the statute does not require proof of direct economic consequences  in all cases, the asserted impact cannot be *speculative* and must at least have a tangible adverse effect on the plaintiff's employment."  Davis, 245 F.3d at 1239.  Plaintiff offers no evidence of how many Saturdays she worked prior to her February 7, 2002, reprimand.  Likewise, after February 7, 2002, Plaintiff never asked to work a Saturday and cannot even speculate as to how many she would have worked, was she allowed to.  (Def. Ex. 1 at 248-249).  Had Plaintiff regularly worked Saturdays and derived substantial income from this practice, this might have constituted an adverse action.  However, given the current record, the Court may safely say that

Plaintiff has failed to produce sufficient evidence on this issue.  Finally, there is the matter of Plaintiff's suspension.  At the time of her suspension Plaintiff was paid $11.83 an hour.  (Def. Ex. 1 at 247).  It is not clear from the record what time of day Plaintiff was suspended.  However, even assuming it was as early as 9:00 am, Plaintiff lost a mere $88.73.

Plaintiff's employments status has not been changed at all, much less *materially*, as the law of this Circuit requires.  See Davis, 245 F.3d at 1239.  Plaintiff still occupies the same position as she did prior to the instances which she complains of.  In fact, while all of this was going on, Plaintiff received two raises, one of which was a "merit" raise.  (Def. Ex. 5 at ¶ 13).   While it is true that Plaintiff lost the wages she would have earned for part of the day she was suspended, her loss is *de minimis*.  Accordingly, it is not likely that Plaintiff has produced evidence sufficient for a jury to conclude that she has suffered a truly adverse employment action.

Even assuming the actions herein were adverse, Plaintiff's *prima facie* case still fails because Plaintiff's comparator Michael Morrison is not a similarly situated employee.  To complete her *prima facie* case, Plaintiff must produce sufficient evidence for a jury to conclude that other employees outside of her class were treated more favorably.  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir.

1999).  When "determining whether employees are similarly situated for the purpose of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." <u>Silvera v. Orange County School B/D:.</u>, 244 F.3d 1253, 1259 (11th Cir. 2001) (citations omitted) (emphasis added).  This inquiry will focus on "the nature of the offenses committed and . . . the punishments imposed."  <u>Id.</u>  Ultimately, this Circuit requires the "comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." <u>Mannicia</u>, 171 F.3d at 1368.

Here, Plaintiff presents Morrison as a similarly situated employee, claiming that he was wearing cologne on the same day Plaintiff was, and that he was not then, nor has he ever been suspended for wearing cologne.  Plaintiff points to Morrison's testimony, in which Morrison admits that since 2002 he has come to work with cologne on and continues to do so.  (Def. Ex. 4 at 16).  Morrison also admits that he was probably wearing cologne on the very day which Plaintiff was suspended.  (Def. Ex. 4 at 16).  Defendant admits that subsequent to Plaintiff's suspension (clearly after Elkins decided to suspend employees who violated the fragrance policy) Elkins received reports that Morrison was wearing cologne and met with him to discuss this issue.  At that meeting, Elkins did not smell any

18

cologne on Morrison, nor has she since Plaintiff's suspension ever detected cologne on Morrison.  (Def. Ex. 5 at ¶ 9).  Moreover, at his meeting with Elkins, Morrison claimed he was unaware of the no fragrance policy, and Elkins believed him.  (Def. Ex. 5 at ¶ 9).

Plaintiff contends that the above evidence is sufficient to discharge the fourth prong of her *prima facie* burden.  However, a close reading of the case law and the evidence reveals that Morrison is not a proper comparator for a singular reason:  Plaintiff offers no evidence that Elkins knew or believed that Morrison was wearing cologne on the days he was investigated.  The Eleventh Circuit has recognized that "[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent."  Silvera, 244 F.3d at 1262.  Where employees have engaged in similar conduct, but the supervisor/manager is not aware of one employee's conduct, the employees are not similarly situated.  See Knight v. Baptist Hospital, 303 F.3d 1313, 1317 n. 5 (11th Cir. 2003).  Furthermore, because Elkins believed Morrison was unaware of the no fragrance policy, her decision to not suspend him is justified.  See Nix, 738 F.2d at 1186 ("[I]f an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown.") (citations omitted).

Elkins testified that when she was informed that Morrison was wearing

perfume, she followed the exact same procedure she did with Plaintiff.  Elkins and

Russell, the office nurse, investigated whether Morrison was wearing cologne that

day.  Neither Elkins or Russell detected any cologne on Morrison.  (Def. Ex. 2 at

30).  Morrison himself has no reason to believe that Elkins ever detected the

cologne he was wearing.  (Def. Ex. 4 at 29).  Subsequent to Plaintiff's suspension

Elkins has never detected cologne on Morrison.  (Def. Ex. 5 at ¶ 9).  Because

Plaintiff offers no evidence that Elkins detected that Morrison was wearing

cologne, as was Plaintiff, Morrison is not a similarly situated comparator.  Thus,

Plaintiff has failed to produce evidence sufficient to discharge her *prima facie*

burden and Defendant's motion for summary judgment as to Plaintiff's disparate

treatment claims is due to be granted.  See id.

## 2.     Retaliation

In addition to her disparate treatment claims, Plaintiff also alleges that her

February 7, 2002, reprimand for insubordination and her April 16, 2002,

suspension were responses to her May 2001 complaints of race discrimination to

Burleson and the charge she filed with the EEOC on February 15, 2002.

Generally, to establish a *prima facie* case of retaliation a plaintiff must show:  (1)

that he engaged in protected activity; (2) that his employer was aware of that

activity; (3) that he suffered an adverse employment action; and (4) there was a

causal link between his protected activity and the adverse employment action. Maniccia, 171 F.3d at 1369 (citing Little v. United Techs., 103 F.3d 956, 959 (11th Cir. 1997)).  The burden-shifting framework outlined above for discrimination claims also applies to retaliation claims.

There is no doubt that Plaintiff's complaint to Burleson and her filing of a charge with the EEOC qualify as protected activity.  Thus, Plaintiff now must produce evidence to show that Defendant was aware of her earlier complaint and her EEOC charge, that she suffered an adverse employment action and that there was a causal link between her suspension and the protected activity.  See Mannicia, 171 F.3d at 1369.  As established earlier in the Court's evaluation of Plaintiff's disparate treatment claims *supra*, the actions taken against Plaintiff do not rise to the level of adverse employment actions.  Even assuming the Court is mistaken, Plaintiff's retaliation claims fail for other reasons.

As to the February 7, 2002, reprimand, Plaintiff cannot meet her *prima facie* burden to show retaliation because Plaintiff offers no evidence that the decision maker Elkins knew of her protected activity.  In the context of Title VII retaliation claims, to establish a causal connection between the protected activity and the adverse employment action, a Plaintiff must "[a]t a minimum, . . . establish that the employer was actually aware of the protected expression at the time."  Clover v.

21

Total System Services, Inc., 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting

Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993)).  Moreover,

mere knowledge by the employer in general is insufficient, if the actual decision

maker implementing the adverse action was unaware of the protected activity.  See

id. 1355-135; see also Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 800

(11th Cir. 2000) (finding that in the context of a retaliation claim, "the fact the

employer is a corporation does not relieve a plaintiff of the burden of showing a

causal connection between the protected conduct and the decision to take the

adverse employment action.").  In the instant case, Elkins made the decision to

give Plaintiff the February 7, 2002, reprimand.  Elkins denies having any

knowledge of Plaintiff's May 2001 complaints to Burleson.  (Def. Ex. 5 at ¶ 12).

Plaintiff has presented no evidence whatsoever rebutting Elkins testimony and

thereby inferring she had knowledge of the protected activity.  Accordingly,

Plaintiff's claim of retaliation with regard to her February 7, 2002, reprimand

fails.[7]

_____

[7] In addition to the fact that Plaintiff fails to produce evidence of Elkins's knowledge, the
Court notes that Plaintiff's original protected activity occurred in May 2001, and the reprimand
she casts as retaliation happened on February 7, 2002.  Even if Elkins did have knowledge of the
May 2001 complaints to Burleson, Plaintiff would still fail to meet her *prima facie* burden.  A
jury may infer a causal connection when there is "[c]lose temporal proximity between the
protected activity and the adverse action . . ."  Shannon, 292 F.3d at 716-717.  Where there is a
long period of time between the protected activity and the alleged retaliatory action, no such
inference may be drawn.  Here there is an eight month gap between the protected activity and the

Plaintiff's claim that her April 16, 2002, suspension was a response to her EEOC charge presents a different situation.  Plaintiff filed her EEOC charge on February 15, 2002.  (Ex. 16 to Def. Ex. 1).  Defendant responded to Plaintiff's charge with a letter to the EEOC on March 5, 2002.  (Pl. Supp. Ev. Ex. 4).  In addition, it is undisputed that Elkins was aware that Plaintiff had filed a charge with the EEOC.  Here, Plaintiff's charge was filed and only two months later she was suspended.  The temporal proximity coupled with Elkins's knowledge of Plaintiff's protected activity is sufficient to establish a causal connection.  See e.g., Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986).  Accordingly, Plaintiff has presented evidence sufficient to establish a *prima facie* case.[8]

In response, Defendant contends that its legitimate non-discriminatory reason for Plaintiff's suspension was her violation of the no fragrance policy.  (Def. Ex. 5 at ¶ 8).  Plaintiff alleges that this reason is pretextual based on two pieces of evidence.  First, Plaintiff points to Morrison and argues that even though he wore cologne after April 16, 2002, he was not suspended.  As discussed in reference to Plaintiff's disparate treatment claim *supra*, Morrison is not a similarly

---

allegedly adverse action.  There being no additional evidence of a connection, the eight month gap is far too long a period of time from which a jury could  infer one.  See Mannicia, 171 F.3d at 1370.

[8]  Again, the Court reaches this conclusion only by assuming the actions taken against Plaintiff were actually "adverse" under Title VII.

situated employee because Elkins did not smell any fragrance on Morrison.  (Def. Ex. 5 at ¶ 9).  Moreover, Elkins explained that Morrison told her he was unaware of the no fragrance policy, and she believed him.  Thus, she did not suspend Morrison.

Defendant's treatment of Morrison does not belie its legitimate reason for Plaintiff's suspension.  While Morrison actually may have been wearing cologne in the office, it is undisputed that A) Elkins did not believe he was wearing it and B) believed he was unaware of the no fragrance policy.  As noted earlier, when "an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown."  Chescheir v. Liberty Mut. Ins. Co., 713 F.2d 1142, 1148 (5th Cir. 1983).  Thus, Elkins decision not to suspend Morrison is not sufficient for a jury to infer discrimination because Elkins believed he was situated differently than Plaintiff.

Finally, Plaintiff offers some emails between Libby Bailey, the Chief Operating Officer and Elkins, in which Bailey suggested disciplining Plaintiff because she was eating at her desk while on the clock.  (Ex. 11 to Def. Ex. 1).  In response to Bailey's suggestion, Elkin's said "I agree . . . boy want [sic] that be fun, I can't wait."  Plaintiff insists that this language shows that Elkins enjoyed disciplining Plaintiff.  While the statement could be interpreted this way, Elkins

24

explained in her deposition that she was being sarcastic because at that time she had been spending a lot of her time dealing with discipline issues. (Def. Ex. 2 at 65-67). Elkins explanation is not rebutted by Plaintiff and is in fact a more plausible explanation of the e-mail:. Even assuming Plaintiff's interpretation of the e-mail: is correct, the e-mail: does not indicate discriminatory intent in anyway. Furthermore, this e-mail: was sent on February 1, 2002. Therefore, this e-mail: cannot provide evidence of retaliation since Plaintiff did not file her charge with the EEOC until 14 days after the e-mail: was sent. Whatever Elkins e-mail: meant it is clear that it is no indication of Defendant's intent to retaliate against Elkins for filing an EEOC charge.

## Conclusion

In conclusion, Plaintiff has failed to produce sufficient evidence to make out a *prima facie* case of disparate treatment under Title VII. Given the record no reasonable jury to conclude in Plaintiff's favor as a matter of law. Defendant's motion for summary judgment is due to be granted as to Plaintiff's disparate treatment claims. Likewise, Plaintiff's evidence is insufficient for a jury to find in her favor on her retaliation claims, and Defendant's motion for summary judgment is due to be granted as to these claims as well.

DONE this the 20th day of January, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE